IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGELIO HECHAVARRIA, | No. C 10-0525 CRB |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, et al., | |
| Defendants. / | |

Defendants move for partial summary judgment on the federal claim arguing there was no conduct under of color of law that would give rise to a federal claim. This motion is GRANTED. This court DECLINES to exercise supplemental jurisdiction for the remaining state claims. As such, this court lacks subject matter jurisdiction and therefore the remaining claims are DISMISSED.

**Background**

This case arose out of an incident between Rogelio Hechavarria ("Plaintiff") and Elias Georgopoulos, a parking control officer ("PCO") of the City and County of San Francisco. Hechavarria, a tow truck driver, works for a subcontractor of Auto Return, the agency that handles tow orders from the San Francisco Municipal Transportation Agency. Hechavarria had an altercation with Georgopoulos due to Hechavarria's involvement with Georgopoulos' wife, another PCO. There is a disagreement about the facts surrounding the dispute.

1  However, the parties do agree that Georgopoulos pepper sprayed Plaintiff in the midst of the
2  quarrel and Hechavarria fell to the ground injuring his wrist.
3      Plaintiff brought suit against Georgopoulos and the City and County of San Francisco,
4  including Georgopoulos' supervisors at the Department of Public Transportation ("DPT").
5  The allegations include a 42 U.S.C. § 1983 cause of action, implicating the municipality for
6  violating Plaintiff's constitutional rights. Defendants have moved for partial summary
7  judgment on the § 1983 claim arguing that there is no color of law issue in this case.

**Legal Standard**

9      Defendants, as the moving parties in this Motion for Partial Summary Judgment, have
10 the initial burden of production. Nissan Fire & Marine Ins. Co., Ltd. V. Fritz Companies,
11 Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). As such, they must either produce evidence
12 negating an essential element of Plaintiff's claim or show that the Plaintiff does not have
13 enough evidence of an essential element to carry his ultimate burden of persuasion at trial.
14 Id.
15     In order to ultimately succeed in their Motion for Partial Summary Judgment,
16 Defendants must show there is no genuine issue of material fact as to the Plaintiff's claim
17 that Georgopoulos acted under color of state law. See Nissan Fire & Marine Ins. Co., Ltd. V.
18 Fritz Companies, Inc., 210 F.3d 1099 (9th Cir. 2000).

**Discussion**

20 **I. Conflict of Interest**
21     Plaintiff seeks to disqualify the City Attorney's office from representing both
22 Georgopoulos and the City and County of San Francisco. Plaintiff argues that the City
23 Attorney's representation of these two defendants presents an actual conflict of interest for
24 counsel in violation of the California Rules of Professional Conduct.
25     However, as Defendants point out in their reply brief, the ability to assert
26 disqualification of counsel due to a conflict of interest lies with Georgopoulos in this case.
27 See Civil Service Commission v. Superior Court, 163 Cal. App. 3d 70, 76-77 (1984). The
28 party moving for disqualification must have had or currently have an attorney-client

relationship with the attorney in question. Id. (citing generally, Hicks v. Drew, 117 Cal. 305, 307 (1897); Grove v. Grove Valve & Regulator Co., 213 Cal. App. 2d 646, 652 (1963)). In the case at hand, Georgopoulos and the City and County of San Francisco are the only parties that may be affected by a conflict of interest. Plaintiff lacks standing and may not seek disqualification of opposing counsel because he is not a party affected by the potential or actual conflict. Therefore, Plaintiff's request is DENIED.

**II.  Color of Law**

Defendants move for partial summary judgment on the issue of whether Georgopoulos was acting under color of state law when he pepper sprayed the Plaintiff. Defendants assert that the dispute between Georgopoulos and Plaintiff was a private altercation that cannot implicate the City and County of San Francisco. Defs.' Mot. Br. 8. They characterize the assault and battery as an attempt by Georgopoulos to stop Plaintiff from harassing his ex-wife, a private matter. Id. at 12.

An individual acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." United States v. Classic, 313 U.S. 299, 326 (1941). He must have abused "the position given to him by the State." West v. Atkins, 487 U.S. 42, 50 (1988).

Plaintiff analogizes the case before this court to U.S. v. Tarpley, 945 F.2d 806 (5th Cir. 1991). In that case, Tarpley, a Deputy Sheriff, learned that his wife had been having an affair with Kerry Lee Vestal. Id. at 808. Tarpley attacked Vestal after luring him to the Tarpley residence. Id. During the attack, Tarpley inserted a service pistol into Vestal's mouth and told him that he was a sergeant and could kill Vestal and "get away with it." Id. at 808-09. He repeated, "I'll kill you. I'm a cop. I can." Id. at 808. The court found that Tarpley was acting under color of state law because he "claimed to have special authority for his action by virtue of his official status" and "the air of special authority pervaded the entire incident." Id. at 809.

Although Tarpley shares some facts with the case before this court, including a violent encounter following the revelation of an extra-marital relationship, the cases are

3

easily distinguishable. The facts in Tarpley paint a picture of egregious conduct in which the Defendant made repeated reference to his official status. Tarpley flaunted his authority throughout the attack. On the other hand, Georgopoulos never once mentioned his official position. Plaintiff argues that the statement Georgopoulos made, "I told you I can do whatever I want with you, motherfucker" shows Georgopoulos' belief that he can get away with anything and thus an abuse of his position. Pl.'s Opp'n 15. Yet, this statement was not made at the time of the incident. It was made in a previous run-in between Plaintiff and Georgopoulos. Defs.' Reply 6.

Defendants analogize this case to Van Ort v. Stanewich, 92 F.3d 83 (9th Cir. 1996). In Van Ort, a Sheriff's Deputy conducted a narcotics search of the Van Orts' residence. Id. at 833. During the course of the search related to an investigation, Stanewich, the Sheriff's Deputy, discovered a safe, which contained cash, jewelry, and coins. Id. Stanewich later returned, on his own accord, to the Van Ort residence and attacked the plaintiffs in an attempt to steal from the safe. Id. at 834. During the ordeal, Stanewich was not wearing a uniform, never displayed a badge, and denied being an officer. Id. at 838. The court found that although Stanewich was a city official, his actions in trying to steal from the Van Orts were not under color of state law.

Plaintiff lists a number of factors that he contends, together, show Georgopoulos acted under color of law. See Pl.'s Opp'n 16. This court disagrees.

First, the fact that the relationship between Georgopoulos and Plaintiff stemmed from Georgopoulos' position does not signify a color of law issue. In Van Ort, Stanewich came into contact with the Van Orts and their safe through his employment as a Sheriff's Deputy. 92 F.3d 83 (9th Cir. 1996). Yet, the court concluded that Van Ort was acting in a private capacity. Id. Plaintiff tries to use Vang v. Toyed, 944 F.2d 476 (9th Cir. 1991), to support his argument. In Vang, a state employee was found to have been acting under color of law when he sexually assaulted Hmong refugees, whom he came into contact under the pretense of possible employment opportunities. Id. at 480. Yet, Vang can be distinguished from this case because the state employee lured in his victims by offering potential employment

4

1 opportunities. Id.  Color of law was found in that case not simply because the state employee
2 came into contact with these refugees through his position, but because he used his position
3 to "exert influence and physical control" over the victims.  Id.  That did not happen here.

4       Second, there are factual disputes as to whether Georgopoulos used city resources to
5 locate Plaintiff and whether the pepper spray was city-issued.  Plaintiff speculates in his
6 deposition that Georgopoulos located his via a government tracking system, but such
7 speculation is likely inadmissible.  Regardless, even if Plaintiff had evidence to prove both
8 allegations, it would not be amount to evidence that Georgeopoulos acted under color of law.
9 In Van Ort, Stanewich, a Sheriff's Deputy, carried a gun and handcuffs when he committed
10 his crime, but was found to be a private actor not under color of law.  92 F.3d 831 (9th Cir.
11 1996).  In Van Ort, the court also referenced a Third Circuit case where a police officer used
12 his service revolver and police-issued nightstick to attack an individual, yet the court found
13 there was no action under color of state law.  Id. at 839 (citing Barna v. City of Perth Amboy,
14 42 F.3d 809, 813 (3d. Cir. 1994)).  Therefore, Georgopoulos could be found to have used city
15 resources and still have acted in a private capacity unrelated to his municipal employment.

16       Next, Plaintiff's claim that he did not defend himself for fear of getting in trouble for
17 hitting a city official does not make Georgopoulos' conduct under color of law.  This
18 argument focuses on Plaintiff's "subjective reaction" and not on Georgopoulos' conduct.
19 See Pitchell v. Callan, 13 F.3d 545, 548-49 (2d. Cir. 1994).  In determining whether certain
20 action taken was under color of law, courts look to the perpetrator's conduct and whether
21 there was an "abuse or misuse of power conferred upon them by state authority."  Id. at 549.
22 Thus, the inquiry should focus on Georgopoulos' conduct, not on Plaintiff's reaction.  The
23 facts are similar to the situation in Van Ort, where the plaintiff recognized the police officer,
24 but the court found that "[m]erely because Donald recognized Stanewich, however, would
25 not make the attack under color of law."  Van Ort, 92 F.3d at 839.

26      For these reasons, this court finds that Plaintiff has not met his burden of producing
27 evidence showing that Georgeopoulos acted under color of law.

28 **III. Violation of Constitutional Right**

1   Plaintiff contends that even if Georgopoulos did not act under color of law, the City
2 and County of San Francisco could still be held independently liable for causing the
3 deprivation of a constitutional right through inadequate hiring, retention, or supervision.
4 Pl.'s Opp'n 17-18.  Defendants take issue with this argument asserting that case law in the
5 Ninth Circuit, specifically Van Ort v. Stanewich, 92 F.3d 831(9th Cir. 1996) precludes
6 claims against the City where there is no underlying constitutional violation.  The court in
7 Van Ort found that Stanewich was acting in a private capacity and consequently the county
8 could not be held liable for the action.  Id. at 836.  In other words, "[b]ecause Stanewich
9 acted as a private citizen, the Van Orts had no constitutional right to be free from his
10 deprivations of their constitutional rights." Id. at 836.

11   In the case at hand, Plaintiff argues that the City and County of San Francisco could
12 be held independently liable for its practices in not disciplining or terminating Georgopoulos
13 prior to the incident.  Pl.'s Opp'n 16.   Plaintiff analogizes this case to Gibson v. City of
14 Chicago, where a police officer that has been put on medical roll as mentally unfit for duty
15 shot and killed a man in his neighborhood.  910 F.2d 1510, 1512-13 (7th Cir. 1990).
16 Although the court found that the officer was not acting under color of law, there was a
17 triable issue of fact as to the claim against the municipality for the Police Department's
18 failure to recover the officer's service revolver when the officer was put on medical roll.  Id.
19 at 1513.

20   Defendants argue that Gibson runs contrary to controlling Ninth Circuit precedent set
21 in Van Ort. Defs.' Reply 12.  In Van Ort, the court recognized that "[o]nly under highly
22 limited circumstances does the government have a duty to protect individuals from
23 deprivations of constitutional rights by private individuals." 92 F.3d at 836.  In such cases,
24 government liability can only be found if there was a special relationship between the
25 individual and the state actor, giving rise to a duty.  Id. (citing DeShaney v. Winnebago Cy.
26 Dep't of Social Serv., 489 U.S. 189, 196-200 (1989); Gazette v. City of Pontiac, 41 F.3d
27 1061, 1065 (6th Cir. 1994)).  Such special relationships arise from affirmative government
28 acts, "like incarceration of criminals and institutionalization of the mentally ill." Van Ort, 92

6

F.3d at 836 (citing DeShaney, 489 U.S. at 198-200). Here, no such relationship existed between the City and County of San Francisco and Hechavarria to warrant such a duty.

Furthermore, even if the court were to take into account the holding in Gibson, Plaintiff could not prevail. In order to prevail, plaintiffs must first show that a municipal policy was the proximate cause of the § 1983 injury. Van Ort, 92 F.3d at 837; Harris, 489 U.S. at 385. (The court stated, "[p]ointing to a municipal policy action or inaction as a 'but-for' cause is not enough to prove a causal connection under Monell." Van Ort, 92 F.3d at 837.) The court in Van Ort noted, "[t]he requisite causal connection can be established not only by some kind of direct personal participation in the deprivation but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." 92 F.3d at 836 (citing Bateson v. Geisse, 857 F.2d 1300, 1304 (9th Cir. 1988)). Further, as the court in Gibson recognized, "municipalities may be held liable for 'inadequate' policies 'only where the failure . . . amounts to deliberate indifference to the rights of person with whom the police come into contact.'" Gibson, 910 F.2d 1510, 1522 (7th Cir. 1990) (citing City of Canton v. Harris, 489 U.S. 378, 387 (1989)).

Here, Plaintiff is unable to meet his burden of showing proximate causation. He contends that the City's negligent hiring, retention, and supervision of Georgopoulos was the proximate cause of Plaintiff's injury. Pl.'s Opp'n 19. However, there is no evidence suggesting that the City acted with "deliberate indifference." More importantly, Georgeopoulos could have behaved in the manner alleged regardless of his employment with the city. Thus, Plaintiff is unable to show that any municipal policy proximately caused Plaintiff's injury.

## Conclusion

For these reasons, Defendants' motion for summary judgment on the § 1983 claim must be granted, and that claim dismissed. This Court further declines to exercise subject matter jurisdiction over the remaining state claims. The remaining claims do not raise an

issue of federal law, nor is there diversity among the parties. Therefore, those claims are DISMISSED for lack of subject matter jurisdiction.

**IT IS SO ORDERED**

Dated: September 17, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE