UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGELIO HECHAVARRIA,<br><br>       Plaintiff,<br>  v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>       Defendants.<br>_____/ | No. C-10-00525 CRB (DMR)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SANCTIONS** |

Before the Court is Defendants' Motion for Sanctions for Plaintiff's Violation of Protective Order. *See* Docket No. 70. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel at the November 17, 2010 hearing, the Court hereby DENIES Defendants' Motion for Sanctions.

**I. Factual Background**

This case arose out of an incident between Rogelio Hechavarria ("Plaintiff") and Defendant Elias Georgopoulos, a parking control officer employed by the City and County of San Francisco ("the City"). Plaintiff Hechavarria is a tow truck driver who works for a City subcontractor. In February 2008, Plaintiff and Georgopoulos had a physical altercation. The parties dispute the facts surrounding the confrontation, but do agree that Georgopoulos pepper-sprayed Plaintiff in the midst of the altercation, and that Plaintiff fell to the ground, injuring his wrist.

Plaintiff brought suit against Defendants Georgopoulos, the City and County of San Francisco, and other City employees, alleging a cause of action under 42 U.S.C. § 1983 for violation of Plaintiff's constitutional rights, as well as state tort claims for assault, battery and intentional infliction of emotional distress against Georgopoulos.  In his February 2010 complaint, Plaintiff alleged that prior to this incident, Georgopoulos had committed multiple acts of violence against co-workers, subordinates, and members of the public.  Docket No. 1, ¶¶ 11, 12.  The § 1983 claim was based upon Plaintiff's allegation that the City and Georgopoulos' supervisors had knowledge of these acts of violence but failed to take appropriate measures to prevent future attacks.  Docket No. 1, ¶ 35.

Prior to filing the present lawsuit Plaintiff's counsel, Joseph May,[1] filed a lawsuit against the same Defendants on behalf of another client, Amjad Abudiab.  In that case, *Abudiab v. CCSF*, No. C 09-1778 MHP, currently pending before the Honorable Judge Marilyn Hall Patel, Abudiab asserted claims for assault and battery and a § 1983 claim against Georgopoulos and the City stemming from a May 2008 incident where Abudiab alleged that while Georgopoulos was on duty he attacked Abudiab with pepper spray.  Docket No. 1, Attachment 1 (Complaint), ¶ 8.

In the course of discovery in *Abudiab*, the parties entered into a stipulated protective order governing the production of confidential documents and information.  Docket No. 74, Declaration of Blake P. Loebs, Attachment 4 (Exhibit D) (Protective Order).  The protective order permits the parties to designate documents as "confidential" or "highly confidential - attorneys' eyes only," and governs the use of the resulting "protected material" in the litigation.  Protective Order at § 5.  The protective order forbids the use of documents or information designated as confidential in any other proceeding without written agreement.  Specifically, it provides that "[a] Receiving Party may use Protected Material that is disclosed or produced by another Party or by a non-party *in connection with this case only* for prosecuting, defending, or attempting to settle this litigation." *Id*. at § 7.1 (emphasis added).  In addition, the protections cover not only the actual documents designated as

---

[1] At oral argument on this matter, May stated that the decisions and behavior at issue in this motion were made solely by him and not in consultation with his client.  Therefore, throughout this opinion, the Court names May in relation to such disclosures in order to distinguish his conduct and decision-making from that of his client's.

confidential, but also "any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by parties or counsel to or in court or in settings that might reveal" protected material. *Id*. at § 3. The protective order contains a provision that the Receiving Party may disclose protected material if the designating party gives written permission. *Id*. at § 7.2.

Following Judge Patel's entry of the protective order in the *Abudiab* matter, Defendants produced a number of documents from Georgopoulos' personnel file to May, all of which were marked "highly confidential - attorney's eyes only."

On August 6, 2010, Defendants moved for summary judgment in the instant case on Hechavarria's § 1983 claim, arguing that there was no genuine issue of material fact as to his claim that Georgopoulos acted under color of state law during the altercation. *See* Docket No. 26. In his opposition, May argued that although Georgopoulos was off duty when he pepper-sprayed Plaintiff, this was but one incident among other incidents involving Georgopoulos, most of which were committed while he was on duty. May further argued that Georgopoulos attacked Plaintiff due in part to his belief that he would not get in trouble for doing so, based on prior incidents having gone unpunished by the City. *See* Docket No. 33.

May redacted several portions of his opposition brief pertaining to alleged prior incidents involving Georgopoulos, and filed a Motion for Leave to File Papers Under Seal, along with a number of documents marked "confidential" and "highly confidential - attorneys' eyes only." The sealed documents were obtained from the discovery in *Abudiab*, the use of which was subject to the protective order in that case.

Additionally, in publicly-available portions of his opposition papers, May made several non-specific references in which he characterized alleged prior inappropriate behavior by Georgopoulos. May argued that this behavior was known to the City but had gone unpunished. Although the statements were devoid of actual details of specific incidents, May repeatedly characterized the

1  severity of the allegations against Georgopoulos.[2]  Finally, in his publicly-available declaration, May
2  described one of the discovery requests he had made in *Abudiab*, followed by a general but
3  provocative statement about the number of confidential documents produced by Defendants in
4  response to that request.

5  Prior to May's filing of his opposition to the summary judgment motion, May and
6  Defendants' counsel Blake Loebs had a telephone conversation and an exchange of emails regarding
7  what May intended to include in his opposition papers.  As discussed further below, the parties
8  vehemently dispute the substance of the telephone communication, as well as the interpretation of
9  the emails.  While Defendants contend that at no time did they ever give May permission to disclose
10 protected material or information from *Abudiab*, May asserts that Loebs warned him about filing
11 protected documents or discussions thereof "in the public record," and that May believed he had
12 been given permission by Loebs to file the documents *under seal*, which would keep them out of the
13 public record.  Docket No. 71 at 5; Docket No. 79 at 6-7.

14 While the motion for summary judgment was still pending, Defendants filed the present
15 Motion for Sanctions and Civil Contempt, seeking sanctions from Plaintiff and May in the form of
16 attorneys' fees for the intentional violation of the *Abudiab* protective order.  Defendants also
17 requested that the Court dismiss Plaintiff's entire action with prejudice, grant Defendants' motion
18 for summary judgment, and find all documents submitted by Plaintiff in opposition to summary
19 judgment inadmissible.  Docket No. 70.

20 The Honorable Judge Charles R. Breyer subsequently granted Defendants' motion for
21 summary judgment, finding there was no conduct under color of law giving rise to a federal claim.
22 Docket No. 84 at 7.  The Court declined to exercise subject matter jurisdiction over the remaining
23 state claims and dismissed those claims, and entered judgment in favor of the Defendants as to the
24 federal claim.  Docket No. 85.

## II. Analysis

---

[2] In this motion, Defendants argue that the sealed documents as well as the statements made about Georgopoulos in Plaintiff's pleadings are damaging because they are humiliating and embarrassing to Georgopoulos. Docket No. 71 at 2.  In order to avoid exacerbating the situation, the Court does not set forth these statements here.

4

As Judge Breyer has already granted summary judgment in favor of Defendants, the remaining requested remedy available to Defendants in this motion is monetary sanctions in the form of attorneys' fees.[3] Defendants' motion is based upon what they characterize as May's willful and knowing violation of two aspects of the *Abudiab* protective order; specifically, 1) May's submission of documents in the present action that are governed by the *Abudiab* protective order, and 2) May's "repeated reference [in his opposition papers] to the contents of those documents in materials available to the public." Docket No. 71 at 5. Defendants seek the imposition of sanctions based on the Court's inherent powers to sanction for violation of a protective order. Docket No. 71 at 6-7; *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

The Court begins with a discussion of the governing legal standards for imposition of sanctions in the form of attorneys' fees pursuant to the court's inherent powers.[4] In *Chambers v. NASCO, Inc.*, the Supreme Court reinforced the longstanding principle that "[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." 501 U.S. at 43 (internal quotation marks omitted); *see also B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1108 (9th Cir. 2002). Courts possess the inherent power to impose attorneys' fees against counsel for "bad faith litigation *or* willful disobedience of court rules or orders." *Zambrano v. City of Tustin*, 885 F.2d 1473, 1481-82, 1485 (9th Cir. 1989) (emphasis added) (citation omitted); *see also In re Lehtinen,* 564 F.3d 1052, 1058 (9th Cir. 2009) (court must make explicit finding of bad faith or willful misconduct before imposing sanctions under its inherent sanctioning authority). However, such sanctions should be reserved for "serious breaches." *Zambrano*, 885 F.2d at 1485. And, as noted by the Supreme Court, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44.

---

[3] In their Reply Brief, Defendants refer to a request for "terminating sanctions" as to Plaintiff's supplemental state claims, but did not clarify what they mean by "terminating sanctions." Docket No. 92 at 3 n.3. In his Order Granting Defendants' Motion for Summary Judgment, Judge Breyer declined to exercise supplemental jurisdiction over Plaintiff's state law claims, and dismissed them on that basis. Docket No. 84 at 7-8. Given that Defendants failed to explain or provide any support for their request for "terminating sanctions," the Court will not entertain this request.

[4] Neither party briefed these governing standards.

*Zambrano* refers to "bad faith" conduct and "willful disobedience" in the disjunctive, as distinct bases for fee awards for sanctionable conduct. In addition, the Ninth Circuit has explained that the term "bad faith... *includes a broad range of willful improper conduct*" and that sanctions may be imposed under a court's inherent powers "if the court specifically finds bad faith or *conduct tantamount to bad faith.*" *See Fink v. Gomez*, 239 F.3d 989, 992, 994 (9th Cir. 2001) (emphasis added). Sanctions thus "are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink*, 239 F.3d at 994. Whether termed "willful misconduct" or conduct "tantamount to bad faith," such sanctionable conduct is "something more egregious than mere negligence or recklessness."[5] *See In re Lehtinen*, 564 F.3d at 1058 (quoting *In re Dyer*, 322 F.3d 1178, 1196 (9th Cir. 2003) (citing *Fink*, 239 F.3d at 993-94)).

In sum, under Ninth Circuit precedent, a court may exercise its inherent power to impose sanctions in the form of attorneys' fees for violation of a court order where the court explicitly finds that the violation constitutes willful disobedience, bad faith *or* conduct that is tantamount to bad faith. Such conduct must amount to more than recklessness or gross negligence.

The Court now applies these governing standards to the two types of conduct challenged by Defendants as violating the *Abudiab* protective order.

**1.    Submission of Confidential *Abudiab* Documents Under Seal**

In Plaintiff's opposition to the present motion, May defends his use of the confidential *Abudiab* documents in this matter on the grounds that he believed that defense counsel acquiesced in his filing the confidential documents *under seal*. Docket No. 79 at 6-8.

On August 18, 2010, May and Loebs had a telephone call regarding what May intended to include in his opposition to Defendants' motion for summary judgment. The substance and outcome of the call is disputed by the parties. Defendants contend that during the call, May "revealed his intention to violate the Protective Order," whereupon Loebs responded that if he did so, Defendants

---

[5] Thus, the imposition of attorneys' fees as a sanction requires a higher level of improper conduct than that required to award sanctions in the form of a fine payable to the Court. *Zambrano*, 885 F.2d at 1480-1481 (sanctions payable to the Court may be based on grossly negligent or reckless conduct).

6

would seek sanctions against him. Docket No. 71 at 5. Loebs then offered to stipulate to allow May a continuance to filing his opposition so that he could resolve any issues regarding the use of the *Abudiab* documents, and any reference to them, before filing the opposition. May refused this offer, and Defendants maintain that at no time did they ever give Plaintiff permission to disclose confidential *Abudiab* documents and information. Docket No. 71 at 5.

Although May acknowledges that Loebs warned him that any violation of the protective order would result in a motion for sanctions, May claims that Loebs was focused on cautioning him about filing protected documents or discussions thereof "in the public record." Docket No. 79 at 6. After this warning, May states that he and Loebs "then discussed alternative ways to proceed." *Id*. One alternative was for the parties to seek a continuance on the summary judgment motion to await resolution on a motion Plaintiff planned on filing in *Abudiab* to challenge the confidentiality designations to the documents. The other alternative that May claims they discussed was "the filing of confidential documents or reference thereto under seal," an option which he claims "met no resistance from Mr. Loebs." Docket No. 79 at 6-7. Loebs vehemently denies this, stating that before Plaintiff filed his opposition, "he was told, in no uncertain terms, that defendants were *not* waiving the protections of the protective order," and that Defendants would seek sanctions for any violation thereof. Docket No. 92 at 5 (emphasis in original).

What followed was an email exchange between May and Loebs that is not a model of clarity on either side. However, it does lend some support to May's assertion that he believed Loebs had given him permission to file the *Abudiab* documents under seal in connection with Plaintiff's opposition. On August 19, 2010, May emailed Loebs to inform him that he did not wish to seek a continuance of the hearing on the summary judgment motion, and that he did not intend to include any details in Plaintiff's opposition taken only from confidential documents. Docket No. 79 at 7; Ex. A to May Decl. Loebs replied to this email on August 20, 2010, emphasizing that "if you mention (*in documents that are available to the public*) those events that are discussed in the very private materials that only you were allowed to review under a very strict protective order in the Abudiab case, this office will take all appropriate actions against you," including seeking sanctions for Plaintiff's "breach of that protective order." *Id*. (emphasis added). This is an ambiguous

statement in that it gives the impression that Defendants were concerned about the possibility of confidential documents being *available to the public*. It is not an unequivocal statement that Plaintiff was not to file *Abudiab* documents under any circumstances.[6]

In May's emailed response the same day, he informed Loebs that "[c]onfidential documents produced in Abudiab and any information gleaned from those documents are being submitted privately to the Court, along with a motion for leave to file those items under seal." Ex. A to May Decl. May then wrote that he planned on asking the Court to seal certain information regarding Plaintiff Hechavarria that Defendants had included in their summary judgment motion. In his response, Loebs stated he had no objection to May's asking to seal the documents pertaining to Plaintiff. *Id.* Loebs made *no* response, by email or otherwise, to May's statement that he was going to submit confidential *Abudiab* documents and information from the documents to the Court under seal. Loebs' failure to respond, along with his original email on August 20, 2010 that focused on deterring May from making the information publicly accessible, could have created the impression that Defendants' main concern was keeping confidential documents out of the public record, and that filing them under seal was an acceptable compromise.

May's submission of confidential documents from *Abudiab* to the court in this matter without written permission from Defendants would be a clear violation of section 7.1 of the *Abudiab* protective order. Protective Order at § 7.1 (emphasis added). However, May disclosed to Defendants that he was going to submit the documents at issue for filing *under seal*, and based upon his communications with Loebs, May believed he had permission from Defendants to do so in accordance with section 7.2 of the protective order, which allows the disclosure of confidential documents upon written permission from the designating party.

On this record, the Court does not find that May's actions in filing the confidential *Abudiab* documents under seal in the present action amounted to willful disobedience, bad faith, or conduct

---

[6] Indeed, Defendants' pleadings continually emphasize that the gravamen of their concern is that potentially embarrassing personnel information about Georgopoulos should not be disclosed in the public record. *See, e.g.,* Docket No. 71 at 2, 3 ("public references," "publicly filed papers," "publicizing private, highly confidential personnel file documents," "publicly humiliating Defendants," "public disclosure," "publically [sic] embarrass").

tantamount to bad faith justifying the imposition of sanctions. However, it is worth noting that May could have followed a better and different course that would have put him well beyond the reach of a motion for sanctions. Loebs offered to give May an extension of time to file Plaintiff's opposition in the present case so that May could resolve any issues regarding the use of the *Abudiab* documents before filing Plaintiff's opposition. Had May pursued that route, it is possible that he would have received permission to use Georgopoulos' personnel documents from *Abudiab* in the instant case, given the similarity of the allegations and the fact that the incidents in each case took place within months of each other. Instead, May took the more expedient course of action by filing the documents without first seeking guidance from the Court, thus opening himself up to potential censure.

### 2.  Statements About Georgopoulos in Publicly-Available Portions of Plaintiff's Opposition Papers

With respect to the allegations about Georgopoulos contained in publicly-available portions of Plaintiff's opposition to Defendants' motion for summary judgment, Defendants argue that the statements are "references to the contents of [the *Abudiab*] documents," and thus a violation of section 3 of the *Abudiab* protective order, which by its terms covers "*any information copied or extracted therefrom*, as well as *all copies, excerpts, summaries, or compilations thereof*." Docket No. 71 at 5 (emphasis added). Defendants also allege that May's statement in his publicly-available declaration about the number of documents produced by Defendants in response to an *Abudiab* discovery request was a description of the "nature or the content of the confidential documents," and thus a further violation of section 3 of the protective order. Docket No. 71 at 6.

In his defense, May asserts that his "vague" references to Georgopolous' prior acts were based upon information Plaintiff already possessed, *independent of* the *Abudiab* documents. Docket No. 79 at 12. Thus, May argues, the allegations were not specific enough to violate the protective order, and also were not based upon protected information.

Upon careful examination of each of the statements at issue, the Court concludes that it is not necessary to reach the question of whether each statement was in fact based on independent

sources.[7] While May's statements are provocative, they do not violate the protective order. The statements are general characterizations about Georgopoulos; they are devoid of details and do not rise to the level of "information copied or extracted" from confidential documents, nor are they "copies, excerpts, summaries, or compilations thereof," as they are not citations from, or summaries of, information contained in the *Abudiab* documents.

The Court acknowledges the tension inherent in marshaling all potentially relevant evidence to oppose a dispositive motion on the merits, while avoiding the violation of a protective order in place in another case. But again, the Court stresses that the proper course of action would have been for May to agree to a continuance in order to seek guidance from the Court about how best to proceed in light of the existence of a protective order governing the evidence he intended to use.

Notwithstanding the Court's conclusion that the statements do not violate the letter of the protective order, they certainly violate its *spirit*, which the Court strongly condemns. As pointed out by Defendants, in some ways a generalized statement can be more damaging than one that contains actual details, since it leaves the reader to flesh out the generalities with innuendo rather than fact. However, the Court is mindful that "inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. Since there was no technical violation of the protective order with respect to the statements made by May in his opposition to the summary judgment motion, the Court concludes that sanctions should not be imposed. May's statements in his brief and his declaration were poorly chosen and inappropriate. The Court expects attorneys to exercise better judgment and be more careful in their submissions to the Court than May was in this instance. However, May's conduct was at most reckless, and therefore does not support a sanction in the form of attorneys' fees.

At the hearing on this motion, Defendants requested for the first time that the Court order the offending statements at issue in this motion redacted from the publicly-available portions of Plaintiff's opposition to the summary judgment motion. Defendants did not brief the issue,

---

[7] It bears noting, however, that as part of his opposition to Defendants' motion for summary judgment, May submitted four declarations attesting to numerous incidents involving Georgopoulos, all of which are outside the protection of the *Abudiab* order.

including any attending concerns regarding the public's right to access court records. May agreed to redact the statement in his declaration regarding Defendants' response to an *Abudiab* discovery request. The Court ordered May to meet and confer with Donald Margolis, counsel for Defendants, regarding the remaining statements at issue. If the parties are unable to reach agreement regarding the remaining statements, they may submit a joint letter to the Court that is no longer than two pages, and that contains each side's positions regarding the disputed proposed redactions.

### III. CONCLUSION

For the above reasons, the Court DENIES Defendants' Motion for Sanctions.

Regarding the parties' agreement to redact a portion of May's declaration, **the Court hereby instructs the Clerk to remove Docket No. 34, filed on August 20, 2010, from ECF. Within five court days after receiving notice that Docket No. 34 has been removed from ECF by the Clerk, Plaintiff's counsel shall re-file Docket No. 34, redacted of lines 2:12-16, on ECF.**

Pursuant to Federal Rule of Civil Procedure 72, any objections to this Order must be filed within 14 days after service of this Order. The implementation of this Order shall be STAYED pending the applicable period for filing objections. If no objections are filed by December 14, 2010, the Clerk is instructed to immediately remove the documents from ECF as indicated above. If objections to this Order are timely filed by December 14, 2010, this Order shall remain stayed pending final determination of any objections.

IT IS SO ORDERED.

Dated: November 30, 2010

_____
DONNA M. RYU
United States Magistrate Judge